**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HANNAH ROCKWELL, ZACK STRUPECK, and STACEY PUCCINI, on behalf of plaintiffs and class members described herein, | ) ) ) ) | |
| | ) | Civil Action No. |
| Plaintiffs, | ) ) | |
| | ) | Jury Trial Demanded |
| v. | ) ) | |
| PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY doing business as FEDLOAN SERVICING INC., | ) ) ) | |
| Defendant. | | |

## COMPLAINT- CLASS ACTION

### INTRODUCTION

1.     Plaintiffs Hannah Rockwell, Zack Strupeck, and Stacey Puccini, individually and on behalf of all others similarly situated, allege the following against Defendant, Pennsylvania Higher Education Assistance Agency, ("PHEAA"), doing business as FedLoan Servicing Inc. Defendant 1) breached their servicing contract with the federal government, of which Plaintiffs were intended third party beneficiaries; 2) tortiously interfered with written agreements between the federal government and its student loan borrowers; and 3) violated various state and federal laws in connection with the servicing of Plaintiffs' federal student loans.  Plaintiffs allege the following upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, based on, among other things, independent investigation of the undersigned counsel.

### BACKGROUND ON FEDERAL STUDENT LOANS

2.     Federal student loans are loans that are either funded or guaranteed by the federal

1

government pursuant to Title IV of the Higher Education Act. They come with an array of repayment options to fit a student borrower's short-term and long-term needs.

3.     The Department of Education offers several repayment plans for individuals with federal student loans. The "standard repayment plan" is the default payment plan. Under the standard repayment plan, monthly payments are calculated such that the borrower's balance is fully paid within 10-30 years. Borrowers who cannot afford payments under this plan are eligible to enroll in various income-driven repayment plans ("IDR plans") that offer significantly lower monthly payments. For instance, under the "Pay As You Earn" plan, the borrower's monthly payments are capped at ten percent of discretionary income, and the remaining debt is discharged after twenty years of qualifying payments. Under some IDR plans, monthly payments can be as low as zero dollars per month.

4.     Borrowers enroll in IDR plans by submitting an IDR request form, along with proof of their adjusted gross income, to their designated loan servicer. Loan servicers are private entities that contract with the Department of Education to handle a multitude of issues for student borrowers, including enrollment in the various IDR plans described above.

5.     One such loan servicer is Defendant, PHEAA, which is engaged in nationwide commercial student-loan financial services. In 2009, PHEAA established "Fedloan Servicing Inc." ("Fedloan") to assist the Department of Education in servicing federal loans. PHEAA now manages more than $100 billion in total assets, and administers the loans of nearly four million borrowers through its various programs.

6.     PHEAA's statutory and contractual duties as a federal student loan servicer include:

    a.     collecting and processing IDR application paperwork submitted by borrowers who request enrollment in, or renewal of, IDR plans;

b.  providing borrowers with adequate notice of federally-mandated disclosures regarding IDR plans to ensure timely renewal of said plans;

c.  assisting borrowers with enrollment in "direct debit" payment, whereby borrowers receive a 0.25% interest rate reduction if they consent to having monthly payments automatically debited from their bank accounts;

d.  placing borrowers' loans into the appropriate type of forbearance, as needed, and in accordance with all applicable federal laws.

7.  PHEAA has breached its servicing contract with the federal government, of which Plaintiffs are intended third party beneficiaries, and tortiously interfered with Plaintiffs' contracts with the federal government, in the following ways:

a.  Failing to provide borrowers with adequate notice of federally-mandated disclosures regarding IDR plan enrollment, which has resulted in the improper cancellation of such plans, and the need for costly forbearances;

b.  Improperly applying "delinquency forbearances" to the accounts of borrowers who enroll in the direct debt program, causing them to incur significant costs not authorized by federal law;

c.  Improperly failing to place borrowers' loans into an administrative forbearance, as required by law, when additional time was needed to process their IDR requests;

d.  Improperly placing borrowers' loans into general forbearance status, in violation of federal law, causing them to incur costly interest capitalizations and to suffer delayed progress toward loan forgiveness;

e.  Misprocessing borrowers' IDR applications, which has resulted in the improper cancellation of such plans.

8.     The Student Loan Ombudsman of the Consumer Financial Protection Bureau received 3,900 complaints from federal student loan borrowers between March 1, 2016 and August 31, 2016 relating to problems managing or repaying federal student loans.  2016 Annual Report of the CFPB Student Loan Ombudsman, available at https://www.consumerfinance.gov/data-research/research-reports/2016-annual-report-cfpb-student-loan-ombudsman/ (last visited January 17, 2018).

9.     An analysis of these complaints found that consumers with student loans identified a range of problems with payment processing, billing, customer service, borrower communications, and income-driven repayment (IDR) plan enrollment. *Id.*

10.     An analysis of 1,062 consumer complaints made against the top ten student loan servicers found that the most commonly cited issue was problems involving the processing and management of IDR plans, which accounted for 20% of all complaints. *Id.* Notably, complaints involving IDR processing accounted for 39% percent of all complaints made against PHEAA, nearly double the industry average. *Id.*  The second most frequent complaint of borrowers against PHEAA involved its communications with borrowers, which accounted for 15% of all complaints against PHEAA. *Id.*

11.     From March 1, 2016 to August 31, 2016, the CFPB received more complaints from federal student loan borrowers against PHEAA than it did against any other loan servicer, aside from Navient Corp., the nation's largest loan servicer. *Id.*

12.     PHEAA is aware of this problem, yet has failed to rectify it. Instead, PHEAA has consistently shifted the consequences of its processing failures onto the borrowers themselves.

**JURISDICTION ANDVENUE**

4

13.     This Court has subject matter jurisdiction over all claims in this action pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2), because this lawsuit has been brought as a class action on behalf of proposed classes each in excess of 100 members; the aggregate claims of the Class members exceed $5 million exclusive of interest and costs; and one or more of the members of each Class is a citizen of a different state than Defendant.

14.     This Court has personal jurisdiction over the Defendant, PHEAA, doing business as Fedloan Servicing Inc., because Defendant does business in this District; and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES
### PLAINTIFF – HANNAH ROCKWELL

15.     Hannah Rockwell ("Ms. Rockwell" or "Plaintiff") is a citizen of the State of Illinois residing in the Northern District of Illinois.  She took out multiple federal student loans under the Federal Family Education Loan Program (FFELP).

16.     On March 25, 2013, these loans were consolidated into a Federal Direct Consolidation Loan Application and Promissory Note ("Ms. Rockwell's Note" hereinafter). *See* 2013 Federal Direct Consolidation Loan Application and Promissory Note, attached as Exhibit A.

17.     Ms. Rockwell's Note contains the following provisions:

   a. "The terms and conditions of loans made under this Note are determined by the [Higher Education Act] and other applicable federal laws and regulations . . . State law, unless it is preempted by federal law, may provide you with certain rights, remedies, and defenses in addition to those stated in the Note . . ."

   b. "Any notice required to be given to me will be effective if sent by first class mail to the most recent address that [the Department of Education] has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation." *Id.*

### PLAINTIFF – ZACK STRUPECK

18.     Zack Strupeck ("Mr. Strupeck") is and was at all relevant times a citizen of the State of Illinois, residing in the Northern District of Illinois.  He took out federal direct loans to finance his education.  These loans are governed by a 2012 Master Promissory Note ("Mr. Strupeck's Note" hereinafter). *See* Strupeck's Master Promissory Note, attached as <u>Exhibit B</u>.

19.     Mr. Strupeck's Note contains the following provisions:

    a. The terms of this [Note] will be interpreted in accordance with the Higher Education Act of 1965, as amended, (20 U.S.C. 1070 et seq.), the U.S. Department of Education's (ED's) regulations . . . and other applicable federal laws and regulations . . . Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN."

    b. "Under certain circumstances, we may . . . give you a forbearance without requiring you to submit a request or documentation.  These circumstances include . . . a period of up to 60 days in order for us to collect and process documentation related to your request for a . . . change in repayment plan (we do not capitalize the interest that is charged during this period)." *Id.*

### PLAINTIFF – STACEY PUCCINI

20.     Stacey Puccini ("Ms. Puccini") is and was at all relevant times a citizen of the State of Illinois, residing in the Northern District of Illinois.  She took out federal student loans between 2010 and 2015.  These loans are governed by a 2010 Master Promissory Note ("Ms. Puccini's Note hereinafter). *See* 2010 Federal Direct Consolidation Loan Application and Promissory Note, attached as <u>Exhibit C</u>.

21.     Ms. Puccini's Note contains the following provisions:

    a. "The terms of this Application and Master Promissory Note (MPN) will be interpreted in accordance with the Higher Education Act of 1965, as amended (20. U.S.C. 1070 *et seq.*), the U.S. Department of Education's (ED's) regulations, as they may be amended in accordance with their effective date, and other applicable federal laws and regulations (collectively referred to as the "Act"). Applicable state law, except as preempted by federal law, may provide for certain borrower rights, remedies, and defenses in addition to those stated in this MPN."

b. "Under certain circumstances, we may . . . give you a forbearance without requiring you to submit a request or documentation. These circumstances include . . . a period of up to 60 days in order for us to collect and process documentation related to your request for a deferment, forbearance, change in repayment plan, or consolidation loan (we do not capitalize the interest that is charged during this period). *Id.*

## DEFENDANT

22.     PHEAA is an independent instrumentality, engaged in non-governmental commercial activity throughout the United States, including the state of Illinois. PHEAA is organized under Pennsylvania law as a miscellaneous business corporation, entity number 619191. Its principal offices are in Pennsylvania. Its registered agent and office is CT Corporation System, 600 North 2nd Street, #401, Harrisburg, Pennsylvania 17101.

23.     PHEAA is financially independent of the state of Pennsylvania, generates its own commercial revenue, and makes its own fiscal and policy decisions.

24.     PHEAA does business as Fedloan Servicing Inc. It contracts with the U.S. Department of Education to service student loans owned by the federal government.

25.     In 2009, PHEAA was one of four "Title IV" servicers to be awarded a Federal Loan Servicing Contract by the Department of Education to service federally-owned loans nationally.

## APPLICABLE LAW ON IDR PLANS AND FORBEARANCES

26.     When student borrowers enroll in an IDR plan, the plan is effective for a one-year period. In order to renew the plan for each subsequent year, borrowers must annually recertify their income level and family size by submitting a new IDR application, along with proof of income, to their loan servicer. 34 C.F.R. §685.221(e)(3).

27.     Between 60 and 90 days prior to the expiration of the IDR plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan in order to continue making income-based payments. 34 C.F.R.

7

§685.221(e)(3)(i). This notice must include the consequences of failing to recertify the IDR plan by the annual deadline. Among these consequences are an increase in monthly payments from a low affordable amount to the amount dictated by the standard ten-year repayment plan. 34 C.F.R. §685.221(e)(7). Moreover, any accrued interest is capitalized, or added the borrower's loan balance, at the time IDR plan is cancelled. 34 C.F.R. §685.221(b)(5).

28.     In addition, for subsidized loans in the first three years of enrollment in an IDR plan, the federal government pays any accrued interest that is not covered by the borrower's monthly payments. When an IDR enrollee fails to recertify before the annual deadline, this valuable interest subsidy is lost.

29.     In view of these consequences, federal law provides certain protections for student borrowers enrolled in IDR plans. For instance, when a borrower timely submits his or her recertification materials, the loan servicer must "promptly" determine the new monthly payment amount. 34 C.F.R. §685.221(e)(8)(i). Thus, the loan servicer has an *affirmative duty* to efficiently process the borrower's recertification materials to ensure smooth re-enrollment from one year to the next. The Department of Education has determined that the appropriate turnaround time to process IDR applications is approximately fifteen days. *See* Danielle Douglas-Gabriel, *Delays. Backlogs. Confusing applications. Obama's latest student loan plan is having growing pains.* Washington Post, Apr. 5, 2016, https://www.washingtonpost.com/news/grade-point/wp/2016/04/05/delays-backlogs-confusing-applications-obamas-latest-student-loanplan-is-having-growing-pains/?utm_term= f858af50bdea).

30.     In addition, when the loan servicer receives a borrower's IDR renewal request prior to the annual deadline, the loan servicer is prohibited from cancelling the IDR plan while the request is being processed. Rather, the servicer "must maintain the borrower's current scheduled

monthly payment amount" until all materials and documents necessary to process the request have been completed and reviewed. 34 C.F.R. §685.221(e)(8)(ii).

31.     A borrower's accrued interest may be capitalized if the borrower "chooses" to leave the income-based repayment plan or "no longer has a partial financial hardship." 34 C.F.R. §685.221(b)(4). Thus, if a borrower timely submits a request to renew an IDR plan, which demonstrates a continuing financial hardship and a choice to remain in the plan, the loan servicer may not capitalize the borrower's accrued interest.

32.     If additional time is needed to collect and process documents supporting a timely submitted IDR request, loan servicers are to place the borrower's account on an administrative forbearance, pursuant to subsection 34 C.F.R. §685.205(b)(9).  Under this provision, a borrower is entitled to a 60-day forbearance, with no resulting capitalization of interest, if the purpose of the forbearance is to allow the loan holder to collect and process documentation supporting the borrower's request for a "change in repayment plan." Because the annual recertification process for IDR plans often involves a change in the monthly repayment amount, due to changes in income and family size, and *always* involves a change in the annual payment period, the administrative forbearance provided under 34 C.F.R §685.205(b)(9) applies to the annual recertification process.

33.     Moreover, all administrative forbearances must be granted "without requiring documentation from the borrower." 34 C.F.R. §685.205(b). Thus, loan servicers should grant administrative forbearances automatically when a borrower's IDR request is timely submitted, but the request has not been fully processed at the time the IDR plan expires.

34.     In contrast to administrative forbearances under 34 C.F.R. §685.205(b), borrowers may request a "general" forbearance under certain circumstances. 34 C.F.R. §685.205(a). General

forbearances are not intended to provide loan servicers with additional time to process IDR requests. Generally, they are only permitted when one of the following situations is present:

a) when the borrower is unable to make scheduled payments due to poor health or other acceptable reasons; 34 C.F.R. §685.205(a)(1).

b) When the borrower's monthly payment is equal to or greater than 20 percent of the borrower's total monthly gross income; 34 C.F.R. §685.205(a)(6).

c) When the borrower agrees to resume making payments after defaulting on the loan or loans. 34 C.F.R. §685.205(a)(8).

35. General forbearances are far more costly to the borrower than administrative forbearances granted under 34 C.F.R. §685.205(b) because any unpaid interest that accrues during the forbearance gets "capitalized," or added to the borrower's loan balance. 34 C.F.R. §685.221(b)(5).

36. General forbearances also differ from administrative forbearances in that, whereas the latter must be granted without requiring documentation from the borrower, the former are authorized only when the borrower "provides sufficient documentation" to justify a forbearance. 34 C.F.R. §685.205(a); see also OMB No. 1845-0018, attached as Exhibit D. The only exception to this documentation requirement is provided for under 34 C.F.R. §685.205(a)(8), which allows the servicer to grant a general forbearance based the borrower's "oral affirmation" to "repay the debt after default." Default is defined as the borrower's failure to make scheduled payments for a period of 270 days. 34 C.F.R. §685.102 (b).

37. Additionally, whereas "general" forbearances are, in many cases, discretionary, administrative forbearances are mandatory when additional processing time is needed to review

an IDR application. (Whereas a loan servicer "may" grant forbearances under 34 C.F.R. §685.205(a)(8)(i), the servicer "grants forbearance" under 34 C.F.R. §685.205(b)(9)).

## PHEAA'S CONTRACT WITH THE DEPARTMENT OF EDUCATION TO SERVICE FEDERAL STUDENT LOANS

38.     The Department of Education awarded PHEAA a servicing contract in 2009 ("servicing contract"). *See* Servicing Contract, attached as <u>Exhibit E</u>. The servicing contract continues to be in force to the present, subject to various modifications.

39.     The servicing contract   states that "[s]pecific  compliance activities for servicing federally held assets include, but are not limited to, Attachments A-1 through A-3" attached thereto. *Id.* at page 19.

40.     Under Attachment A-1, servicers are required to "meet all statutory and legislative requirements." *Id.* Attachment A-1.  Moreover, "the servicer's procedures and systems shall include a system of internal controls that ensures resource use is consistent with laws, regulations and policies." *Id.*

41.     Under Attachment A-2, loan servicers may only promote services if they meet legislative and regulatory requirements, *Id.* Attachment A-2, and they must respond to written and email questions and requests timely and accurately to resolve customer complaints. *Id.*

42.     Attachment A-2 also requires that the servicer "meet all legislative and regulatory requirements for the Direct Loan Program." *Id.*

43.     Under Attachment A-3, loan servicers must offer a "0.25% interest rate reduction for borrowers making payments through electronic debit accounts." *Id.* Attachment A-3.

44.     Finally, the servicing contract requires the loan servicer to be "responsible for maintaining a full understanding of all federal and state laws and regulations and FSA

requirements and ensuring that all aspects of the service continue to remain in compliance as changes occur." *Id.*

### FACTUAL ALLEGATIONS – STACEY PUCCINI

45.     In October of 2016, the Department of Education created a modified version of OMB No. 1845-0102, the IDR request form, to replace its previous version of the form. *See* form at https://static.studentloans.gov/images/idrPreview.pdf. The revised version, however, displayed the same expiration date – October 31, 2018 – as did the previous version. *See* form at https://ifap.ed.gov/dpcletters/attachments/18450102IDRFINALExtended.pdf.

46.     Despite its 2016 revisions to OMB No. 1845-0102, the Department of Education continued to display the old version of the form on its website until at least January of 2018. *Id.* On January 13, 2018, a "google" search of the words "income based repayment form" produced the Department of Education's link to the old version of the form on the first page of results. *See* google search on "income based repayment form" attached as Exhibit F. A "google" search of the words "income driven repayment form" also produced this link on the first page of results. *See* google search on "income driven repayment form" attached as Exhibit G.

47.     Because the previous version of the form displayed an expiration date of October 31, 2018, and remained accessible on the Department of Education's website, PHEAA knew or should have known that borrowers would continue to use the old version of the form. PHEAA failed to take any steps to advise its borrowers to use the revised version of the form.

48.     On May 24, 2017, Stacey Puccini sent a completed IDR request form to PHEAA. *See* Ms. Puccini's May 24, 2017 IDR request, attached as Exhibit H. She used the version of the form that was in use prior to the 2016 revisions, which displayed an expiration date of October 31, 2018. Ms. Puccini had accessed this version of the IDR form at the webpage maintained by Federal

Student Aid, an Office of the Department of Education. *See* https://ifap.ed.gov/dpcletters/attachments/18450102IDRFINALExtended.pdf

49.     On June 22, 2017, PHEAA sent a letter to Ms. Puccini, informing her that PHEAA could not process her request because the version of the IDR request form she had submitted was expired. *See* June 22, 2017 denial letter, attached as <u>Exhibit I</u>. The letter instructed Ms. Puccini to complete and send the revised version of the IDR request form, a copy of which was enclosed with the letter.

50.     Despite the fact that more time was needed to collect and process additional documentation supporting Ms. Puccini's request for a change in repayment plan (from the default "standard repayment plan" to an income-driven plan), PHEAA did not place Ms. Puccini's loans into a 60-day administrative forbearance, pursuant to 34 C.F.R. §685.205(b)(9), when it denied her IDR request.  Had it done so, any interest that accrued during the remaining processing of her request would not have been capitalized, or added to her loan balance.

51.     Shortly after her first IDR request was denied, Ms. Puccini completed and signed the revised version of the IDR request form and sent it to PHEAA. On July 27, 2017, PHEAA sent a letter to Ms. Puccini, informing her that her second IDR request form could not be processed because it contained "conflicting information." *See* July 27, 2017 letter, attached as <u>Exhibit J</u>. Ms. Puccini called PHEAA's customer service line and inquired as to why her second IDR request was denied.  A representative explained that she had answered a question that she was supposed to leave blank, based on her answer to a previous question. (In fact, the information was not "conflicting."  Plaintiff merely answered a question that she was not required to answer.) Enclosed with the letter was an additional IDR request form.  The letter instructed Ms. Puccini to complete and return the enclosed form with all required documents. *See* <u>Exhibit J</u>.

13

52. Despite the fact that more time was needed to collect and process additional documentation supporting Ms. Puccini's request for a change in repayment plan (from the default "standard repayment plan" to an income-driven plan), PHEAA did not place Ms. Puccini's loans into a 60-day administrative forbearance, pursuant to 34 C.F.R. §685.205(b)(9), when it denied her second IDR request. Had it done so, any interest that accrued during the remaining processing of her request would not have been capitalized, or added to her loan balance.

<u>**FACTUAL ALLEGATIONS – HANNAH ROCKWELL**</u>
<u>**IMPROPER NOTICE**</u>

53. Hannah Rockwell signed a Federal Direct Consolidation Loan Application and Promissory Note on March 25, 2013, *See* <u>Exhibit A</u>, which combined her multiple federal student loans into a single loan. In May of 2014, PHEAA was designated as her loan servicer.

54. In June of 2016, Ms. Rockwell applied to enroll in the "Revised Pay As You Earn" plan ("REPAYE"), under which monthly payments are limited to ten percent of the borrower's discretionary income. Her request was approved on June 30, 2016, and her monthly payment under the plan was calculated at $643.35, with the first installment being due on July 7, 2016.

55. PHEAA did not send Ms. Rockwell written notification of the approval or terms of the plan, either by first class mail, or to an electronic address that Ms. Rockwell had provided to PHEAA. Rather, PHEAA uploaded an electronic notice of the approval and terms of the plan to a "paperless inbox," a secured online account on PHEAA's website, that PHEAA assigned to Ms. Rockwell. To access the paperless inbox, borrowers are required to log into their online account with an individual username and password.

56. Ms. Rockwell was not aware that any correspondence regarding her IDR plan was uploaded to her online account. Because she did not receive any emails or letters regarding her IDR request, she was not aware that her IDR request had been approved.

14

57.     In July of 2016, PHEAA began uploading monthly billing statements to Ms. Rockwell's paperless inbox, but did not send copies of these statements to her by first class mail or by email. Because she did not receive these billing statements, Ms. Rockwell missed multiple monthly payments between June of 2016 and January of 2017, causing her loans to become delinquent.

58.     By January of 2017, Ms. Rockwell still had not received any emails, letters, or billing statements regarding her requested IDR plan. At or around this time, she called PHEAA's customer service line to inquire as to the status of her IDR request. A PHEAA representative informed her that the request had been approved six months earlier, and that she had failed to make monthly payments ever since. The representative also advised Ms. Rockwell that she could avoid missing future payments by enrolling in PHEAA's "direct debit" program, whereby monthly payments are automatically debited from the borrower's bank account. The representative also advised that borrowers who enroll in direct debit receive an interest rate reduction of 0.25%.

59.     In order to miss any future payments, Ms. Rockwell agreed to enroll in direct debit, and provided her bank account and routing information in writing. Her direct debit plan was approved, and timely payments were processed for the remainder of the annual payment period.

60.     On March 24, 2017, PHEAA uploaded a renewal notice to Ms. Rockwell's paperless inbox on PHEAA's website. The notice stated that Ms. Rockwell's IDR plan would soon expire unless she submitted a new IDR request with supporting documentation by May 27, 2017. The notice warned that a failure to do so would result in the capitalization of any unpaid interest, and an increase in monthly payments to $1,704.48. PHEAA did not, however, send this notice to Ms. Rockwell by first class mail or by email.

61.     Because Ms. Rockwell did not receive written notification of her IDR plan's renewal deadline, she was unable to recertify the plan before its expiration.  As a result, PHEAA increased her monthly payments to $1,704.48, and added $558.76 of unpaid interest to her loan balance.

62.     Ms. Rockwell's Note states as follows: "Any notice required to be given to me will be effective if sent by first class mail to the most recent address that ED has for me, by electronic means to an address I have provided, or by any other method of notification permitted or required by applicable statute or regulation." *See* Exhibit A at page 4. (Emphasis added)

63.     Under federal law, when a borrower is enrolled in an IDR plan, the loan servicer must send the borrower written notification of the borrower's enrollment, the start and end dates of the annual period, the monthly repayment amount under the plan, and information on how to renew the plan at the end of the annual payment period. 34 C.F.R. §685.221(e)(2). Between 60 and 90 days prior to the expiration of the plan, the loan servicer must send the borrower a written notice of the "annual deadline" by which the borrower must recertify the plan in order to continue making income-based payments. 34 C.F.R. §685.221(e)(3)(i). This notice must include the consequences of failing to recertify before the annual deadline, including an increase in monthly payments from a low affordable amount to the amount dictated by the standard ten-year repayment plan, and the capitalization of any accrued interest at the time IDR plan is cancelled. 34 C.F.R. §685.221(b)(5).

64.     It has been a regular practice of PHEAA to encourage its borrowers to "go paperless" by consenting to receive correspondence from PHEAA electronically.  For instance, borrowers who visit their online account will often be shown a banner that reads, "Would you like to go paperless?  We've made it easy to go paperless, so there's no reason to keep getting paper

communication in the mail. Our FREE service reduces clutter and helps the environment too!" *See* "paperless inbox" banner ad, attached as <u>Exhibit K</u>.

65.     Borrowers who consent to "go paperless" reasonably believe that electronic notices will be sent directly to the email address they have provided to PHEAA, pursuant to the promissory note, and therefore do not frequently access their paperless inbox. As a result, they do not receive their federally-mandated disclosures regarding the status of the IDR plans.

66.     When legally required notices are uploaded to a borrower's paperless inbox, PHEAA will, in some instances, send the borrower an email stating that a "message" is available on borrower's online account. However, neither the subject line of these emails, nor their content, make any reference to the substance of the notice. Rather, these emails will vaguely state, "A new message has been placed in your Fedloan Servicing paperless inbox. To access this message, select 'Go To Paperless inbox' below and sign in. Or go to Account Access at MyFedloan.org to view your paperless inbox." *See* PHEAA email, attached as <u>Exhibit L</u>.

67.     Written notification regarding the terms of an IDR plan, and instructions on the recertification process, are legally required disclosures. Thus, under the terms of Ms. Rockwell's Note, PHEAA was required to send her these disclosures by first class email, or to an email address that she provided. PHEAA did neither.

68.     PHEAA's servicing contract with the federal government states that "borrowers whose loans are not being serviced in compliance with the Requirements, Policy, and Procedures for servicing federally held debt due to the fault of the servicer (i.e. . . notices sent properly . . .) will not be billable to the Government from the initial point of non-compliance." *See* <u>Exhibit F</u> at page 12. Because PHEAA has billed the federal government for servicing practices that violated

the notice policies set forth in the federal promissory note, PHEAA has breached the servicing contract, of which Ms. Rockwell was an intended third party beneficiary.

### FACTUAL ALLEGATIONS – HANNAH ROCKWELL
### ABUSE OF DIRECT DEBIT

69.     In or about January of 2017, a PHEAA representative advised Ms. Rockwell to enroll in PHEAA's "direct debit" program, whereby monthly payments are automatically debited from the borrower's bank account.  The representative also advised that direct debit participants receive an interest rate reduction of 0.25%. Ms. Rockwell agreed to enroll, and provided her bank account and routing information in writing.

70.     PHEAA approved Ms. Rockwell's direct debit application, but it first applied a "delinquency forbearance" to bring her account current.  The delinquency forbearance was applied retroactively to cover the delinquent period of June 27, 2016, through January 12, 2017 (when Ms. Rockwell missed several payments because she did not receive her monthly billing statements).  The delinquency forbearance was applied automatically, and without Ms. Rockwell's consent.

71.     As a result of the delinquency forbearance, over $5,000 in unpaid interest was added to Ms. Rockwell's loan balance.  PHEAA did not inform Ms. Rockwell that enrollment in the direct debit program would cause her to incur a capitalization of unpaid interest.

72.     No provision of 34 C.F.R. §682.211 or 34 C.F.R. §685.205, which govern the use of forbearances placed on federal student loans, authorizes the use of a delinquency forbearance when a borrower enrolls in a direct debit program.  By engaging in this practice, Defendant violated federal law.

73.     Because Ms. Rockwell's written agreement with the federal government requires compliance with all applicable federal law, PHEAA tortiously interfered with the performance of the agreement by unlawfully placing a delinquency forbearance on her account.

74.     Because PHEAA's servicing contract requires compliance with applicable federal law, the aforementioned practice constitutes a breach of the servicing contract, of which Ms. Rockwell was an intended third-party beneficiary.

75.     Alternatively, even if a delinquency forbearance was properly applied to Ms. Rockwell's account, PHEAA should have informed her that any benefit from the 0.25% interest rate reduction would be offset and outweighed by the resulting capitalization of unpaid interest.

### FACTUAL ALLEGATIONS – ZACK STRUPECK

76.     Zack Strupeck took out multiple federal Direct Loans to cover the cost of his post-graduate education.  The terms of his loans are set forth in a Master Promissory Note.  *See* MPN attached as <u>Exhibit B</u>. *See* Strupeck Note, attached as <u>Exhibit B</u>.

77.     When Mr. Strupeck entered into repayment, the Department of Education designated PHEAA as his loan servicer.  In 2015, he enrolled in an IDR plan.  During the first annual payment period, Mr. Strupeck's monthly payments were $0 per month, based on his most recent tax filing.

78.     After securing fulltime employment as a public defender, Mr. Strupeck submitted an electronic IDR request to renew his payment plan for the following year, accompanied by proof of his new income. His electronic request was received by PHEAA on September 16, 2016, prior to the annual renewal deadline. Mr. Strupeck also timely submitted a paper copy of the IDR request, which PHEAA received on September 17, 2016.  Both IDR request forms were properly completed, and accompanied by proof of Mr. Strupeck's income.

19

79. Mr. Strupeck's IDR request was approved on November 17, 2016, with income-based monthly payments calculated at $423.06. Mr. Strupeck made a timely payment in this amount for the first month of the annual payment period. However, on November 24, 2016, PHEAA inexplicably cancelled Mr. Strupeck's IDR plan and switched him to a monthly payment of $894.76. This amount reflected Mr. Strupeck's placement on the standard ten-year repayment plan. On December 20, 2016, Mr. Strupeck received a bill for $894.76, which was due on January 10, 2017.

80. On or about December 23, 2016, Mr. Strupeck called the PHEAA customer service line and informed a PHEAA representative that his IDR request had initially been approved, but was cancelled only a week later. The representative advised that the cancellation of the IDR plan was based on a "lender error." Mr. Strupeck asked that the error be resolved so that he could continue making monthly payments of $423.06. The PHEAA representative assured Mr. Strupeck that the matter would be resolved prior to his next payment deadline of January 10, 2017, and that PHEAA would follow-up with a telephone call to confirm the renewal of his IDR plan once the error was fixed.

81. On or about January 7, 2016 – three days prior to his next payment deadline – Mr. Strupeck still had not received a follow-up call from PHEAA. He called the customer service line to inquire as to the status of his IDR request, whereupon a PHEAA representative informed him that the processing error had still not been resolved. Mr. Strupeck informed the representative that he could not afford monthly payments of $894.76, and asked if he could continue making payments in the amount of $423.06 to avoid any adverse consequences from non-payment. The representative informed Mr. Strupeck that a partial payment would cause his loans to become

delinquent, and that a partial payment would not count as a qualifying payment toward Public Service Loan Forgiveness (PSLF).

82.     The PHEAA representative advised Mr. Strupeck that, short of making payments of $894.76, the only way to avoid delinquency was to place his account into forbearance status while the error was resolved. A general forbearance was then processed over the phone.

83.     Because Mr. Strupeck wished to continue making monthly payments that would count toward PSLF, and did not wish to place his loans into forbearance, he did not provide PHEAA with any documentation in support of a forbearance request.

84.     At no time did PHEAA place Mr. Strupeck's loans into administrative forbearance status while it reviewed his IDR request to resolve its own processing error.

85.     On March 1, 2017 – more than four months after PHEAA received Mr. Strupeck's IDR requests – his IDR plan was finally renewed. The accrued interest that was capitalized at the end of this forbearance amounted to $5,715.93, allowing PHEAA to benefit from its own error.

86.     Mr. Strupeck's loans were placed in forbearance from January 10, 2017 to April 30, 2017. During this period, he was unable to make any qualifying payments toward PSLF.

87.     If a loan servicer receives a borrower's recertification materials prior to the specified recertification deadline, the loan servicer is prohibited from switching the borrower to the standard ten-year plan while it processes those materials. Rather, the servicer "must maintain the borrower's current scheduled monthly payment amount until the loan holder determines the new monthly payment amount." 34 C.F.R. §685.221(e)(8)(ii). By cancelling Mr. Strupeck's IDR plan, placing him on the standard repayment plan, and refusing to allow continued income-based payments, despite his timely submission of an IDR renewal request, PHEAA violated federal law.

88.     Under 34 C.F.R. §685.205(a), a forbearance is authorized only when the borrower

"provides sufficient documentation" to support his or her request for forbearance. The only exception to this documentation requirement is provided for under 34 C.F.R. §685.205(a)(8), which allows a servicer to apply a general forbearance based on the borrower's "oral affirmation" to "repay the debt after default." Default is defined as the borrower's failure to make scheduled payments for a period of 270 days. 34 C.F.R. §685.102(b). Because Mr. Strupeck did not submit any documentation requesting a forbearance, and did not fail to make any scheduled payments during his first year under the IDR plan, PHEAA violated federal law by improperly, and without a legal basis, placing his loans into general forbearance.

89.     If a borrower timely submits an IDR renewal request, the servicer must "promptly" determine the borrower's new monthly payment amount. 34 C.F.R. §685.221(e)(8)(i). Thus, the loan holder has an affirmative legal duty to process the borrower's recertification materials in a timely manner. PHEAA violated federal law by taking more than four months to correctly process Mr. Strupeck's IDR request, despite the Department of Education's determination that IDR requests should be processed within 15 days. *See* Danielle Douglas-Gabriel, *Delays. Backlogs. Confusing applications. Obama's latest student loan plan is having growing pains.* Washington Post, Apr. 5, 2016, https://www.washingtonpost.com/news/grade-point/wp/2016/04/05/delays-backlogs-confusing-applications-obamas-latest-student-loanplan-is-having-growing-pains/?utm_term= f858af50bdea).

90.     A borrower is entitled to a 60-day administrative forbearance, with no resulting capitalization of interest, if the purpose of the forbearance is to allow the loan holder to "collect and process documentation supporting the borrower's request for . . . change in repayment plan." 34 C.F.R. §685.205(b)(9). By failing to place Mr. Strupeck's loans into a 60-day administrative forbearance to resolve its own error, and instead placing his loans into general forbearance status

22

for a period of more than four months, and capitalizing the interest that accrued therein, PHEAA violated federal law and profited from its own inefficiencies.

91.     Because PHEAA's servicing contract requires compliance with all applicable federal law, the aforementioned practices constitute a breach of the servicing contract, of which Mr. Strupeck was an intended third-party beneficiary.

92.     Because Mr. Strupeck's written agreement with the federal government requires compliance with applicable federal law, the aforementioned practices constitute tortious interference with the performance of the contract.

## CLASS  ACTION ALLEGATIONS

93.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(l), (b)(2), and/or (b)(3) on behalf of the following proposed Classes:

### NATIONWIDE GENERAL FORBEARANCE CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in a forbearance pursuant to 34 C.F.R. §685.205(a), but who did not submit any documentation to PHEAA requesting a forbearance, and who did not fail to make scheduled payments for at least 270 days prior to the forbearance.

### NATIONWIDE ADMINISTRATIVE FORBEARANCE CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, timely submitted an IDR request that was denied because of alleged errors in completing the form, or because the version of the form was outdated, but who were not granted a 60-day administrative forbearance, with no resulting capitalization of interest, to submit a new IDR request and/or additional supporting documents.

### NATIONWIDE FAILURE-TO-NOTIFY CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action:

1. were enrolled in an IDR plan, but did not receive written notification of the annual renewal deadline in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and who failed to timely renew the plan, and/or

2. requested enrollment in an IDR plan, but did not receive written notification of their enrollment in the plan in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and/or

3. were issued billing statements that were not sent by first class mail, or to an email address provided to PHEAA by the borrower.

## NATIONWIDE DIRECT-DEBIT CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, had a delinquency forbearance applied to their loans as a result of enrolling in the direct debit program.

## NATIONWIDE FAILURE TO PROCESS CLASS

All individuals with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in an IDR plan, and submitted a request to renew the plan, which was received prior to the annual deadline, but who were nonetheless removed from the plan due to PHEAA's processing errors and/or delays.

## ILLINOIS GENERAL FORBEARANCE CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in a forbearance pursuant to 34 C.F.R. §685.205(a), but who did not submit any documentation to PHEAA requesting a forbearance, and who did not fail to make scheduled payments for at least 270 days prior to the forbearance.

## ILLINOIS ADMINISTRATIVE FORBEARANCE CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this

action, timely submitted an IDR request that was denied because of alleged errors in completing the form, or because the version of the form was outdated, but who were not granted a 60-day administrative forbearance, with no resulting capitalization of interest, to submit a new IDR request and/or additional supporting documents.

## ILLINOIS FAILURE-TO-NOTIFY CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action:

1. were enrolled in an IDR plan, but did not receive written notification of the annual renewal deadline in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and who failed to timely renew the plan, and/or

2. requested enrollment in an IDR plan, but did not receive written notification of their enrollment in the plan in a letter sent by first class mail, or in an email sent to an email address provided to PHEAA by the borrower, and/or

3. were issued billing statements that were not sent by first class mail, or to an email address provided to PHEAA by the borrower.

## ILLINOIS DIRECT-DEBIT CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, had a delinquency forbearance applied to their loans as a result of enrolling in the direct debit program.

## ILLINOIS FAILURE TO PROCESS CLASS

All Illinois residents with federal student loans serviced by PHEAA who, at any time on or after a date 10 years prior to the filing of this action, were enrolled in an IDR plan, and submitted a request to renew the plan, which was received prior to the annual deadline, but who were nonetheless removed from the plan due to PHEAA's processing errors and/or delays.

## CAUSES OF ACTION

## COUNT I - TORTIOUS INTERFERENCE WITH CONTRACT
### (Zack Strupeck and the Nationwide General Forbearance Class against Defendant for Tortious Interference with the Promissory Note)

95.     Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

96.     Plaintiff brings this Count on behalf of members of the Nationwide General Forbearance Class.

97.     At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

98.     The contracts between the federal government and Plaintiffs and members of the Class required compliance with all applicable federal law.

99.     By placing the loans of Plaintiff and members of the Class into general forbearance status, without documentation to support a request for forbearance, and in the absence of any default on said loans, Defendant violated federal law.

100.     Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by placing the loans of Plaintiff and members of the Class into general forbearance status in violation of federal law.

101.     Because the contracts between the federal government and Plaintiff and members of the Class required compliance with all applicable federal law, Defendant's violations thereof tortiously interfered with the performance of the contracts.

102.     Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and

26

Plaintiff and the Class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

103.     As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (ii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## <u>COUNT II – BREACH OF CONTRACT</u>

### (Zack Strupeck and the Nationwide General Forbearance Class against Defendant for Breach of the Servicing Contract)

104.     Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

105.     Plaintiff brings this Count on behalf of members of the Nationwide General Forbearance Class.

106.     At all relevant times, Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

107.     The servicing contract between Defendant and the federal government required compliance with all applicable federal law.

108.     By placing the loans of Plaintiff and members of the Class into general forbearance status, without documentation to support a request for forbearance, and in the absence of any default on said loans, Defendant violated federal law.

27

109.     Because the servicing contract required compliance with applicable federal law, Defendant's violations thereof constituted a breach of the contract.

110.     Alternatively, even if it is determined that the practices described above did not induce a breach of the servicing contract, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contract.

111.     As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class were intended third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; and (ii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT III - TORTIOUS INTERFERENCE WITH CONTRACT

**(Stacey Puccini and the Nationwide Administrative Forbearance Class against Defendant for Tortious Interference with the Promissory Note)**

112.     Plaintiff Stacey Puccini repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

113.     Plaintiff brings this Count on behalf of members of the Nationwide Administrative Forbearance Class.

114.     At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

115.     The contracts between the federal government and Plaintiff and members of the Class required compliance with all applicable federal law.

116.    By failing to place the loans of Plaintiff and members of the Class into a 60-day administrative forbearance, with no resulting capitalization of interest, despite the fact that additional time was needed to collect and process documentation in support of a timely submitted IDR plan request, Defendant violated federal law.

117.    Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by failing to place the loans of Plaintiff and members of the Class into a 60-day administrative forbearance, with no resulting capitalization of interest, despite the fact that additional time was needed to collect and process documentation in support of a timely submitted IDR plan request.

118.    Because the contracts between the federal government and Plaintiff and members of the Class required compliance with all applicable federal law, Defendant's violations thereof tortiously interfered with the performance of the contracts.

119.    Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and Plaintiff and the class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

120.    As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same.

## COUNT IV -  BREACH OF CONTRACT

**(Stacey Puccini and the Nationwide Administrative Forbearance Class against
Defendant for Breach of the Servicing Contract)**

29

121.    Plaintiff Stacey Puccini repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

122.    Plaintiff brings this Count on behalf of members of the Nationwide Administrative Forbearance Class.

123.    At all relevant times, Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

124.    The servicing contract between Defendant and the federal government required compliance with all applicable federal law.

125.    By failing to place the loans of Plaintiff and members of the Class into a 60-day administrative forbearance, with no resulting capitalization of interest, despite the fact that additional time was needed to collect and process documentation in support of a timely submitted IDR plan request, Defendant violated federal law.

126.    Because the servicing contract required compliance with all applicable federal law, Defendant's violations thereof constituted a breach of the servicing contract.

127.    Alternatively, even if it is determined that the practices described above did not constitute a breach of the express terms of the servicing contract, these practices nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the contract.

128.    As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class were intended third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same.

30

## COUNT V - TORTIOUS INTERFERENCE WITH CONTRACT

**(Hannah Rockwell and the Nationwide Failure to Notify Class against Defendants for Tortious Interference with the Promissory Note)**

129.    Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

130.    Plaintiff brings this Count on behalf of members of the Nationwide Failure to Notify Class.

131.    At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

132.    The contracts between the federal government and Plaintiff and members of the Class required that all legally required notices be sent to Plaintiff and members of the Class by first class mail, or electronically to an address provided by the borrower, unless otherwise permitted by federal law.

133.    Defendant failed to send legally required notices regarding IDR plan enrollment to Plaintiff and members of the Class by first class mail or electronically to an address provided by Plaintiff and members of the Class.

134.    Defendant's practice of posting legally required notices regarding IDR plan enrollment to Defendant's own website is not a manner of notice that is otherwise permitted by federal law.

135.    Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by using a method of notice that does not satisfy the notice requirements set forth in the borrowers' contracts.

31

136.     By failing to provide notice as provided in the contracts between the federal government and Plaintiff and members of the Class, Defendant tortiously interfered with the performance of the contracts.

137.     Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and Plaintiff and the class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

138.     As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT VI – BREACH OF CONTRACT

**(Hannah Rockwell and the Nationwide Failure to Notify Class against Defendants for Breach of the Servicing Contract)**

139.     Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

140.     Plaintiff brings this Count on behalf of members of the Nationwide Failure to Notify Class.

141.     Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

142.     The servicing contract between Defendant and the federal government prohibited Defendant from billing services to the federal government that were not provided in compliance with the requirements, policy, and procedures for servicing federally held debt.

143.     Defendant failed to send legally required notices regarding IDR plan enrollment to Plaintiff and members of the Class by first class mail or electronically to an address provided by Plaintiff, as provided in the contracts between the federal government and Plaintiff and members of the Class.

144.     Because Defendant's method of issuing legally required notices regarding IDR plan enrollment does not conform to the policies, procedures, and requirements for servicing federally held debt, as set forth in the federal promissory note, Defendant has breached the servicing contract.

145.     Alternatively, even if it is determined that the practices described above did not constitute a breach of the express terms of the servicing contract, the aforementioned practice nonetheless constitutes a breach of the covenant of good faith and fair dealing implied in the contract.

146.     As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class are third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

**COUNT VII -  TORTIOUS INTERFERENCE WITH CONTRACT**

**(Hannah Rockwell and the Nationwide Direct Debit Class against Defendants for Tortious Interference with the Promissory Note)**

147.    Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

148.    Plaintiff brings this Count on behalf of members of the Nationwide Direct Debit Class.

149.    At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

150.    The contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law.

151.    No provision of 34 C.F.R. §682.211 or 34 C.F.R.§685.205, which authorize the use of forbearances in connection with federal student loans under certain circumstances, authorizes the use of a forbearance when a borrower enrolls in a direct debit program. By engaging in this practice, Defendant violated federal law.

152.    Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by applying delinquency forbearances to the accounts of direct debit applicants, which were not authorized by federal law.

153.    Because the contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law, Defendant tortiously interfered with the performance of these contracts by engaging in the aforementioned practice.

154.    Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and

Plaintiff and the Class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

155.     As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT VIII – BREACH OF CONTRACT

### (Hannah Rockwell and the Nationwide Direct Debit Class against Defendant for Breach of the Servicing Contract)

156.     Plaintiff Hannah Rockwell repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

157.     Plaintiff brings this Count on behalf of members of the Nationwide Direct Debit Class.

158.     Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

159.     The servicing contract between Defendant and the federal government required compliance with applicable federal law.

160.     No provision of 34 C.F.R. §682.211 or 34 C.F.R. §685.205, which authorize the use of forbearances in connection with federal student loans under certain circumstances,

authorizes the use of a forbearance when a borrower enrolls in a direct debit program. By engaging in this practice, Defendant violated federal law.

161.     Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by applying delinquency forbearances to the accounts of direct debit applicants, which were not authorized by federal law.

162.     Because the servicing contract required compliance with applicable federal law, Defendant breached the servicing contract by engaging in the aforementioned practice.

163.     Alternatively, even if it is determined that the aforementioned practice did not constitute a breach of the express terms of the servicing contract, it nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contract.

164.     As a result of Defendant's breach of the servicing contract, of which Plaintiff and members of the Class are intended third party beneficiaries, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## **COUNT IX -  TORTIOUS INTERFERENCE WITH CONTRACT**

**(Zack Strupeck and the Failure to Process Class against Defendant for Tortious Interference with the Promissory Note)**

165.     Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

166.     Plaintiff brings this Count on behalf of members of the Nationwide Failure to Process Class.

167.     At all relevant times, Plaintiff and members of the Class had a valid and enforceable contract with the federal government.

168.     The contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law.

169.     Under federal law, if a loan servicer receives a borrower's request to renew an IDR plan prior to the annual renewal deadline, the loan servicer is prohibited from switching the borrower to the standard ten-year repayment plan while it processes the request.  Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the request is processed.  By cancelling Plaintiff's IDR plan, and placing him on the standard repayment plan, despite his timely submission of an IDR renewal request, PHEAA violated federal law.

170.     If a borrower timely submits an IDR renewal request, the servicer must promptly determine the borrower's new monthly payment amount. Thus, the loan holder has an affirmative legal duty to process the borrower's recertification materials in a timely manner. By taking more than four months to correctly process Mr. Strupeck's IDR request, despite the Department of Education's determination that IDR requests should be processed within 15 days, PHEAA violated federal law.

171. Defendant was aware of the aforementioned contracts, and intentionally and unjustifiably induced the federal government to breach these contracts, through its own acts as agent for the federal government, by engaging in the aforementioned unlawful practices.

172. Because the contracts between the federal government and Plaintiff and members of the Class required compliance with applicable federal law, Defendant tortiously interfered with the performance of these contracts by engaging in the aforementioned practices.

173. Alternatively, even if it is determined that the practices described above did not induce a breach of the express terms of the contracts between the federal government and Plaintiff and the Class, these practices nonetheless induced a breach of the covenant of good faith and fair dealing implied in the contracts.

174. As a result of Defendant's tortious interference with the performance of the contracts between Plaintiff and the federal government, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

## COUNT X – BREACH OF CONTRACT

**(Zack Strupeck and the Failure to Process Class against Defendant for Breach of the Servicing Contract)**

175. Plaintiff Zack Strupeck repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

38

176.     Plaintiff brings this Count on behalf of members of the Nationwide Failure to Process Class.

177.     At all relevant times, Defendant was party to a valid and enforceable servicing contract with the federal government, of which Plaintiff and members of the Class were intended third party beneficiaries.

178.     The servicing contract between Defendant and the federal government required compliance with applicable federal law.

179.     Under federal law, if a loan servicer receives a borrower's request to renew an IDR plan prior to the annual renewal deadline, the loan servicer is prohibited from switching the borrower to the standard ten-year repayment plan while it processes the request.  Rather, the servicer must maintain the borrower's current scheduled monthly payment amount until the request is processed.  By cancelling Plaintiff's IDR plan, and placing him on the standard repayment plan, despite his timely submission of an IDR renewal request, PHEAA violated federal law.

180.     If a borrower timely submits an IDR renewal request, the servicer must promptly determine the borrower's new monthly payment amount. Thus, the loan holder has an affirmative legal duty to process the borrower's recertification materials in a timely manner. By taking more than four months to correctly process Plaintiff's IDR request, despite the Department of Education's determination that IDR requests should be processed within 15 days, PHEAA violated federal law.

181.     Because the servicing contract required compliance with applicable federal law, the aforementioned practices constitute a breach of the servicing contract.

182.    Alternatively, even if it is determined that the aforementioned practices did not constitute a breach of the express terms of the servicing contract, these practices nonetheless constituted a breach of the covenant of good faith and fair dealing implied in the contracts.

183.    As a result of Defendant's breach of the servicing contract, Plaintiff and members of the Class have suffered the same substantial damages, including, but not limited to, (i) unpaid interest added to the principal  balance of loans along with amounts accrued as a result of the capitalization of same; (ii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; and (iii) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same.

### COUNT XI - VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ICFDBPA"), 815 ILCS 505/2

### (All Plaintiffs and all Illinois Classes Against Defendant)

184.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

185.    Plaintiffs bring this Count on behalf of members of all Classes that are limited to residents of the State of Illinois.

186.    Defendant is "person[s]" within  the  meaning  of  815 ILCS 505/1(c).

187.    The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA") prohibits "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the

concealment, suppression or omission of such material fact . . . in the conduct of any trade or

commerce . . . whether any person has in fact been misled, deceived or damaged thereby." 815

ILCS 505/2.

188. In the course of their business, PHEAA commits, or committed, the following

unfair and/or deceptive acts or practices in violation of the ICFDBPA:

    a.    Deceptively and unfairly inflating borrower's loan balances by placing their
    accounts into general forbearance status without documentation of the borrower's
    request to do so, and under circumstances not permitted by federal law;

    b.    Deceptively and unfairly denying to borrowers a legally mandated 60-day
    administrative forbearance, with no capitalization of interest, when additional
    time was needed to process their IDR plan requests;

    c.    Deceptively and unfairly providing borrowers with inadequate notice of billing
    statements, making it more difficult for them to make scheduled payments;

    d.    Misrepresenting to borrowers that a general forbearance should be applied to their
    account while PHEAA resolved its own processing errors and delays, allowing
    PHEAA to financially benefit from its own inefficiencies;

    e.    Deceptively and unfairly applying delinquency forbearances to the accounts of
    borrowers who enrolled in the direct debt program, in violation of federal law,
    and failing to warn said borrowers that such forbearances could outweigh any
    advantage gained by the associated interest rate reduction;

f. Deceptively and unfairly providing borrowers with inadequate notice of critical information relating to their IDR plans, thereby preventing them from renewing their IDR plans;

g. Deceptively notifying IDR plan participants of the availability of electronic notices posted to their online account by way of vaguely worded emails that contained no information about the purpose or contents of the electronic notice;

h. Unfairly cancelling the IDR plans of borrowers who timely submitted their recertification materials, in violation of federal law;

i. Unfairly and deceptively failing to process IDR applications in a reasonably prompt manner, as required by federal law;

189. PHEAA knew or should have known that their conduct violated the law.

190. PHEAA's unfair and deceptive practices were material to Plaintiffs and members of the Illinois Classes.

191. Plaintiffs and members of the Illinois Classes suffered ascertainable loss and actual damages as a direct and proximate result of PHEAA's deceptive and unfair practices, including, but not limited to, (i) the difference in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; (iv) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same; and (v) adverse credit reporting.

192.    PHEAA's violations present a continuing risk for financial harm to Plaintiffs, members of the Classes, and the general public.  PHEAA's unlawful acts and practices complained of herein affect the public interest.

193.    Plaintiffs and members of the Classes seek damages under the ICFDBPA for injury resulting from the direct and natural consequences of PHEAA's unlawful conduct.

194.    Plaintiffs and members of the Classes also seek an order enjoining PHEAA's unfair, unlawful, and/or deceptive practices;  declaratory  relief; attorneys' fees; and any other just and proper relief available under the ICFDBPA.

195.    PHEAA engaged in gross, oppressive or aggravated conduct justifying the imposition of punitive damages.

## COUNT XII - VIOLATIONS OF 73 Pa. Stat. § 201-1 et seq.
### (All Plaintiffs, and all National Classes, Against Defendant)

196.    Plaintiffs repeat and re-allege each and every allegation set forth above as if fully set forth herein.

197.    Plaintiffs bring this Count on behalf of all members of the National Classes.

198.    In the course of their business, PHEAA commits, or committed, the following unfair and/or deceptive acts or practices in violation of the ICFDBPA:

a.    Deceptively and unfairly inflating borrower's loan balances by placing their accounts into general forbearance status without documentation of the borrower's request to do so, and under circumstances not permitted by federal law;

b.    Deceptively and unfairly denying to borrowers a legally mandated 60-day administrative forbearance, with no capitalization of interest, when additional time was needed to process their IDR plan requests;

43

c.  Deceptively and unfairly providing borrowers with inadequate notice of billing statements, making it more difficult for them to make scheduled payments;

d.  Misrepresenting to borrowers that a general forbearance should be applied to their account while PHEAA resolved its own processing errors and delays, allowing PHEAA to financially benefit from its own inefficiencies;

e.  Deceptively and unfairly applying delinquency forbearances to the accounts of borrowers who enrolled in the direct debt program, in violation of federal law, and failing to warn said borrowers that such forbearances could outweigh any advantage gained by the associated interest rate reduction;

f.  Deceptively and unfairly providing borrowers with inadequate notice of critical information relating to their IDR plans, thereby preventing them from renewing their IDR plans;

g.  Deceptively notifying IDR plan participants of the availability of electronic notices posted to their online account by way of vaguely worded emails that contained no information about the purpose or contents of the electronic notice;

h.  Unfairly cancelling the IDR plans of borrowers who timely submitted their recertification materials, in violation of federal law;

i.  Unfairly and deceptively failing to process IDR applications in a reasonably prompt manner, as required by federal law;

199.    All of these actions were decided upon, and misrepresented from, Defendant's headquarters in Pennsylvania.

200.    As a result of Defendant's violations, Plaintiffs and members of the National Classes have suffered the same sizeable damages, including, but not limited to (i) the difference

44

in amount paid under an IDR plan versus the amount paid when enrolled, or re-enrolled, in a standard repayment plan; (ii) unpaid interest added to the principal balance of loans along with amounts accrued as a result of the capitalization of same; (iii) the loss of the interest subsidy offered by the federal government for those with subsidized loans; (iv) financial harm associated with delayed progress towards loan forgiveness, due to individuals not making qualifying payments that would count toward same; and (v) adverse credit reporting.

201.    The corresponding financial benefit to Defendant was received by them at their headquarters in Pennsylvania.

202.    Plaintiffs and members of the Class seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practice, declaratory relief, attorney's fees, and any other just and proper relief available.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request that this Court enter a judgment against Defendant and in favor of Plaintiffs and the class:

A.  Certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Classes and Plaintiffs' counsel as counsel for the Classes;

B.  Declaring, adjudging, and decreeing the conduct alleged herein as unlawful;

C.  Enjoining Defendant from continuing to commit the above-cited violations of law;

D.  Awarding compensatory and punitive damages along with pre- and post-judgment interest;

E.  Granting Plaintiffs the costs of suit, including reasonable attorneys' fees and expenses; and

F.  Affording Plaintiffs with such other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: 1/18/18_____


Respectfully submitted,



EDELMAN COMBS LATTURNER &
GOODWIN, LLC

s/Daniel A. Edelman_____
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN COMBS LATTURNER &
GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
*Counsel for Hannah Rockwell,*
*Zack Strupeck, Stacey Puccini*
*and the Classes*

FIORENTINO LAW OFFICES, LTD.

s/Anthony Fiorentino_____
Anthony Fiorentino
FIORENTINO LAW OFFICES LTD.
180 N. LaSalle Street, Suite 2440
Chicago, Illinois 60602
anthony@fiorentinolaw.com
*Counsel for Hannah Rockwell,*
*Zack Strupeck, Stacey Puccini*
*and the Classes*